CLARENCE ANTHONY, alias CLARENCE COUNTEE, Petitioner, v. PAUL E. KAISER, Warden Missouri State Penitentiary.—No. 38385.—169 S. W. (2d) 47.

Court en Banc, February 26, 1943.

*Roy McKittrick*, Attorney General, *Ernest Hubbell* and *W. J. Burke*, Assistant Attorneys General, for respondent.

██ LEEDY, J.—Habeas corpus. Petitioner is confined in the penitentiary. He alleges his imprisonment is unlawful for the reason his term has expired.

There is no dispute as to the facts. Summarized, they are as follows: On April 10, 1939, in the Circuit Court of Jackson County, petitioner pleaded guilty to burglary in the second degree and larceny. His punishment was fixed at two years' imprisonment on each charge, and he was sentenced to the Intermediate Reformatory for Young Men (at Algoa) for a total of four years. He was incarcerated in said reformatory until October 10, 1940, at which time he was granted a conditional ██ commutation, or parole, by the Acting Governor. On January 11, 1941, while at large under said parole, he again pleaded guilty in the same court to an information charging burglary in the second degree, which offense was alleged to have been committed on January 9, 1941. He was sentenced on said plea to a term of two years in the Missouri Penitentiary. There was no reference to the former conviction in the latter judgment and sentence, and, consequently, no direction therein as to whether its operation should be postponed until the expiration of said former sentence.

Petitioner was forthwith incarcerated in the penitentiary under the second sentence. Thereafter, on March 12, 1941, the Governor revoked petitioner's parole (from Algoa), and consented, in writing, to his transfer from Algoa to the penitentiary, under the provisions of Section 9118 (sub-section b) R. S. '39.

Petitioner served 18 months of his first sentence at Algoa. Since the date of his transfer he has served three-fourths of the remaining or unexpired 2½ years of said term, so *if the second sentence* (2-year sentence) *runs concurrently with the first,* he is entitled to his discharge under the three-fourths rule prescribed by Section 9086 R. S. '39 [Mo. R. S. A. sec. 9086.]

The case turns on the question of whether the two sentences run concurrently or consecutively. Petitioner asserts the former, and the return of respondent the latter, although respondent's *brief* upholds petitioner's theory of *concurrent* sentences, and cites many cases in support thereof. The main proposition briefed is whether, when petitioner was sentenced under his second conviction, the case

was within the purview of Section 9226 R. S. '39[1] [Mo. R. S. A. sec. 9226], so as to automatically, and without express direction in the second sentence, make the two cumulative, or consecutive, by force of the provision that "the [subsequent] sentence of such convict shall not commence to run until the expiration of the . . . [first]."

Penal and criminal statutes, such as the one before us "are generally 'construed strictly as to those portions which are against defendants, but liberally construed in those which are in their favor —that is, for their ease and exemption. No person is to be made subject to such statutes by implication, and, when doubts arise concerning their interpretation, such doubts are to weigh only in favor of the accused.'" [State v. Taylor, 345 Mo. 325, 133 S. W. (2d) 336.]

The statute appeared in its present form as Section 1668 of the Revised Statutes of 1879, and has ever since remained unchanged. It is one of three sections which comprise Article I of Chapter 49 R. S. '39. The article is captioned "Civil Rights of Convicts." Section 9225, which immediately precedes the one in question, specifies the effect upon civil rights flowing from "a sentence of imprisonment *in the penitentiary.*" Article II of the same chapter in relation to "Estates of Convicts" is similarly restricted to those instances where "sentence of imprisonment *in the penitentiary*" has been imposed. Kansas statutes with reference to the forfeiture or suspension of civil rights of convicts, and which bear a strong analogy to the foregoing were held by the Supreme Court of that state to be inapplicable to one sentenced to the State Industrial Reformatory upon conviction for rape; the court saying, "The judgment pronounced against him was simply 'that he be sent to the state industrial reformatory at Hutchinson, Kan.' His civil rights were not, therefore, forfeited. . . . Section 312 of chapter 102 of the General Statutes of 1897 provides for the appointment of a trustee to take charge of the property of a person sentenced to the penitentiary for a term less than his natural life . . . This statute, however, is not applicable to the case of plaintiff in error. He was not

---

[1] "The person of a convict *sentenced to imprisonment in the penitentiary* is and shall be under the protection of the law, and any injury to his person, not authorized by law, shall be punishable in the same manner as if he were not under conviction and sentence; *and if any convict shall commit any crime* in the penitentiary, or *in any county of this state while under sentence*, the court having jurisdiction of criminal offenses in such county shall have jurisdiction of such offense, and such convict may be charged, tried and convicted in like manner as other persons; *and in case of conviction, the sentence of such convict shall not commence to run until the expiration of the sentence under which he may be held: Provided*, that if such convict shall be sentenced to death, such sentence shall be executed without regard to the sentence under which said convict may be held in the penitentiary." [Section 9226 R. S. '39; Mo. R. S. A. sec. 9226.] (Emphasis ours.)

sentenced to the penitentiary." [Sample v. Horner, 60 Pac. 745. See, also, Beard v. Boston, 151 Mass. 96, 23 N. E. 826.]

An independent search of the authorities discloses Ohio had a somewhat similar statute, which provided for the trial of "a convict in the penitentiary," etc. [Section 13601, G. C. 1910], but no reported case construing it on the point at issue was found. However, it is significant that the Legislature of that state saw fit to amend the statute in 1929 by adding thereto the words "or state reformatory" thereby extending its provisions to convicts therein. [Laws, Ohio, 1929, p. 171.]

The act of 1927 by which the Intermediate Reformatory for Young Men was created expressly provided for its establishment "separate and apart from the Missouri Penitentiary . . ." It is an institution "for young men, who for the first time have been convicted of a felony." [Sections 9108, 9109 R. S. '39; M. R. S. A. secs. 9108, 9109.] But the inmates are convicts, and they are referred to as such in numerous sections of said act.

It is obvious that petitioner is not within the class of persons described in the first line of Section 9226, namely, those "sentenced to imprisonment *in the penitentiary.*" If he is amenable to the statute at all, it is by virtue of the italicized portion of the following provision: "and *if any convict shall commit any crime* in the penitentiary, or *in any county* of this state *while under sentence,*" etc., he shall, upon conviction, suffer consecutive sentences. This provision was brought into the act at the revision session of 1879 by an amendment which added all of the matter now contained in said section following the first semi-colon. It can hardly be thought the Legislature by using the words "any convict" in said amendment intended or meant to embrace any class of convicts other than those with which it was dealing in the first part of the same sentence, i. e., those "sentenced to imprisonment *in the penitentiary.*" And, accordingly, the words "any convict," as used therein, mean and should be construed as "any *such* convict." We think that meaning evident and emphasized by the proviso with which the section concludes, wherein it says, "*Provided,* that if such convict shall be sentenced to death, such sentence shall be executed without regard to the sentence under which said convict may be held *in the penitentiary.*" (Emphasis ours.) We are, therefore, forced to the conclusion that the statute is not applicable to petitioner.

In State ex rel. Meininger v. Breuer, 304 Mo. 381, 264 S. W. 1, this court examined and construed what is now Section 4849, R. S. '39. It is not contended that this section is at all applicable to the case at bar, but it is akin to Section 9226. Indeed, the two constitute our only statutes prescribing an automatic rule for consecutive or cumulative sentences. It was there said that, *in the absence of such a statute,* "the law then, as now, was settled beyond dispute that . . . sentences were not cumulative, even where

they might be made so, unless the sentencing court expressly made them so . . . ,'' and that the purpose of the statute was "merely to provide that in the cases it covered the sentences should run successively by force of the statute itself and not be dependent for their cumulative character upon any action of the trial court specially referable to that matter.'' See, also, 15 Am. Jur., Criminal Law, sec. 465.

Ordinarily sentences to different institutions are, in the very nature of things, cumulative and not concurrent. But we do not regard the circumstance that the petitioner's two sentences, as originally pronounced, were to different institutions is controlling as establishing their successive character for the reason the provisions of the intermediate reformatory act with respect to transferring prisoners from that institution to the penitentiary are written into every sentence pronounced under said act. After the revocation of his parole, and transfer from Algoa, petitioner was held under both sentences in the same institution, the penitentiary, and so, in legal contemplation his two sentences are to be treated as if both had originally designated the same institution. Compare, in this connection, Zerbst v. Lyman, 255 Fed. 609, 5 A. L. R. 377; Kidwell v. Zerbst, 19 Fed. Supp. 475; White v. Kwiatkowski, 60 Fed. (2d) 264.

"Sentences in criminal cases should reveal with fair certainty the intent of the court and exclude any serious misapprehension by those who must execute them.'' [U. S. v. Daugherty, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309. See, also, annotation to 70 A. L. R., l. c. 1512.] Petitioner's convictions were in the same court, but whether before the same judge does not appear. At the time of the second, the court either knew, or did not know, he was already under sentence, and, in its discretion, could have imposed either a cumulative or a concurrent sentence. If the court had such knowledge, and its sentence contained no direction that it be cumulative, an intention is thereby evinced that the sentences should be served concurrently. On the other hand, if the court had no such knowledge there would have been no occasion to even consider the question of imposing a successive term, and so the court could have had no intention other than its sentence should begin forthwith. [Zerbst v. Lyman, supra.] Therefore, with no applicable statute making the two terms successive, and in the absence of a direction in the sentence or commitment to that effect, we think, under the rule stated in the Meininger case, supra, and from what has been said above, petitioner's terms were concurrent, and he is entitled to his discharge under the three-fourths rule. It is so ordered. All concur except *Gantt, J.*, absent.