STATE of South Dakota, Plaintiff
and Appellee,

v.

Robert John WOOLEY, Defendant
and Appellant.

No. 16820.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1990.

Decided Sept. 5, 1990.

Diane Best, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger Tellinghuisen, Atty. Gen., Pierre, on brief.

Craig M. Johnson, Office of the Public Defender, Rapid City, for defendant and appellant.

SABERS, Justice.

Robert John Wooley (Wooley) appeals his convictions and sentences for one count of grand theft and two counts of first degree intentional damage to property. We affirm in part and reverse in part.

## FACTS

On the evening of January 6, 1989, Mike Friend and Keren Young held a dinner party at their home in Rapid City, South Dakota. Guests at the party were Wooley, Liz Paris, Amy Chambers and Scott VandenHoek. Liz Paris had other plans and, after dinner, left the group and went on about her own business. At approximately 9:00 p.m., the five people remaining in the group proceeded to the Crystal Lounge in downtown Rapid City.

The group stayed in the Crystal Lounge until approximately 11:30 p.m., drinking, talking and dancing. At 11:30, Wooley, Mike Friend and Keren Young left the lounge. Scott VandenHoek and Amy Chambers left a few minutes later. While crossing the street in front of the lounge, VandenHoek and Chambers saw Wooley and Mike Friend "walk over" the top of a car parked in a parking lot across the street, damaging the vehicle. After "walking over" the car, Wooley and Friend got into Friend's pickup with Keren Young and drove away. VandenHoek recognized that the car damaged by Wooley and Friend belonged to an acquaintance and subsequently reported the incident to the owner of the vehicle and to the police.

Sometime after midnight the night of the dinner party, Wooley, Mike Friend and Keren Young stopped by Liz Paris' house. The three invited Paris back to the Friend/Young residence, telling her that they had taken a pop machine from the golf course. Paris followed the three to the Friend/Young residence where she saw a Coke machine sitting in the garage. Wooley, Friend and Young told her that they were going to break into the machine and Paris left a short time later.

At 1:50 a.m. the morning after the dinner party, the Rapid City police department received a report that a Coke machine was laying in the middle of a street about two blocks from the Friend/Young residence. Two officers were dispatched to the scene who found the machine as reported. The machine appeared to have been damaged in a fall from a truck and from attempts to pry it open. Coca Cola representatives were called to pick up the machine and they were able to determine that it had been taken from the nearby Executive Golf Course.

The investigation of the damage to the car at the Crystal Lounge and the theft of the Coke machine ultimately led to Wooley and Mike Friend. The two were jointly charged in an information with one count of first degree intentional damage to property (the car), one count of grand theft (the Coke machine), and a second count of first degree intentional damage to property (the Coke machine). A motion for severance was granted and Wooley and Friend were tried separately on the three counts. Wooley testified during his own jury trial and admitted "walking over" the car but denied any involvement in the theft of, or damage to, the Coke machine. Nevertheless, the jury returned a verdict finding Wooley guilty on all three counts. Judgment and sentence were entered and Wooley appeals.

## ISSUE ONE

WHETHER THE EVIDENCE IS SUFFICIENT TO SUSTAIN WOOLEY'S CONVICTIONS?

As his first issue, Wooley challenges the sufficiency of the evidence to sustain his convictions. Our standard of review on such contentions is well established:

In determining the sufficiency of the evidence on appeal, our review is limited to determining whether there is evidence in the record which, if believed by the fact

finder, will sustain a finding of guilt beyond a reasonable doubt. *State v. La-Croix*, 423 N.W.2d 169 (S.D.1988); *see also State v. Ashker*, 412 N.W.2d 97 (S.D.1987). We must accept the most favorable inferences that can be drawn from the evidence in support of a verdict. *State v. Miskimins*, 435 N.W.2d 217 (S.D.1989).

*State v. Hanson*, 456 N.W.2d 135, 139 (S.D. 1990).

Wooley argues that the evidence must be considered insufficient to sustain his convictions because state presented identical evidence against Mike Friend in his jury trial yet, Friend was acquitted while he was convicted. In support of his argument, Wooley relies on *People v. Taylor*, 25 Ill.App.3d 396, 323 N.E.2d 388 (Ill.App. Ct.1974).

■ Initially, we observe that *Taylor* is a decision of the Illinois Court of Appeals and is not binding on this court. Moreover, *Taylor* is distinguishable from Wooley's case. In *Taylor*, three co-defendants were jointly tried, two by the court and one by the jury. The trial court convicted Taylor, acquitted one co-defendant and the jury convicted the other co-defendant. On these facts, the Illinois Court held that if one defendant is found guilty and a co-defendant not guilty on identical evidence, the guilty finding cannot stand. The Illinois courts have subsequently interpreted *Taylor* to mean that, "when two defendants *are jointly tried* and one is convicted while the other is acquitted on evidence which, as to both defendants, is identical in all respects, a reasonable doubt exists as to the guilt of the convicted defendant." *People v. Porterfield*, 53 Ill.App.3d 458, 11 Ill.Dec. 116, 368 N.E.2d 667, 669 (Ill.App.Ct.1977) (emphasis added).

The crucial factor distinguishing this case from *Taylor* is that Wooley and Mike Friend were not jointly tried. Therefore, it cannot be determined whether the evidence against them was identical. Only Wooley's record is before this court.

Furthermore, the general rule on inconsistency in verdicts against co-defendants provides: ⸱⸱

As in the case of a verdict on a number of counts in an indictment or information, ... inconsistency in a verdict convicting some and acquitting other defendants does not invalidate the convictions. Even where the evidence is the same as to all defendants, *an acquittal of one does not necessitate an acquittal of the others.* (emphasis added).

23A C.J.S. *Criminal Law* § 1405 (1989) (footnotes omitted). This court has recognized a similar principle in holding that state's dismissal of a conspiracy charge against a defendant's co-conspirator did not mandate reversal of the defendant/appellant's conspiracy conviction. *State v. Giuliano*, 270 N.W.2d 33 (1978).

The United States Supreme Court has similarly followed the view that acquittal of a co-defendant has no bearing on the conviction of another co-defendant. In *United States v. Dotterweich*, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48 (1943), a corporation and its president were both tried for a violation of the Food, Drug and Cosmetic Act. The jury convicted the president but acquitted the corporation. The Supreme Court gave short shrift to the president's contention on appeal that the jury could not find him guilty because it failed to find the corporation guilty. The High Court observed, "[j]uries may indulge in precisely such motives or vagaries." *Dotterweich*, 320 U.S. at 279, 64 S.Ct. at 135, 88 L.Ed. at 51. We agree and likewise conclude that Friend's acquittal has no bearing on Wooley's convictions.

■■ The only other respect in which Wooley urges insufficiency of the evidence relates to Liz Paris' testimony linking him to the Coke machine late on the night of the Friend/Young dinner party. Wooley asserts that he successfully attacked Paris' credibility with a prior inconsistent statement she gave to his investigator. He argues that the impeachment of Paris' credibility casts doubt on the jury's verdict and renders the evidence insufficient to sustain his convictions.

It is a matter of settled law that, "in determining the sufficiency of the evidence

to sustain a conviction, it is not the province of this court 'to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.'" *Hanson*, 456 N.W.2d at 139 (quoting, *State v. Faehnrich*, 359 N.W.2d 895, 900 (S.D.1984)). Witness credibility is a question for the jury. *State v. Wilcox*, 441 N.W.2d 209 (S.D.1989). Here, despite the purported impeachment of Paris' testimony, it appears the jury found her to be a credible witness and, accordingly, found Wooley guilty on all three counts. Based upon the foregoing observations, we find sufficient evidence to sustain his convictions.

### ISSUE TWO

WHETHER THE TRIAL COURT EXCEEDED ITS JURISDICTION AND AUTHORITY IN IMPOSING WOOLEY'S SENTENCES?

Wooley argues that the trial court exceeded its jurisdiction and authority in imposing his sentences. We agree.

The trial court gave Wooley essentially identical sentences on Count I (intentional damage to the automobile) and Count III (intentional damage to the Coke machine). Both sentences were for a $1,000 fine and a five year penitentiary term. Execution of four and one-half years of both penitentiary terms was suspended on certain conditions including payment of restitution [1] and a 180 day sentence in the county jail. As to Count II (grand theft of the Coke machine), Wooley was sentenced to five years in the penitentiary plus $1,034 restitution. Both intentional damage to property sentences were ordered to be served concurrently with and subject to the five year penitentiary sentence for grand theft.

At the outset, we note that Wooley was sentenced for three separate criminal offenses. Each offense is a Class 4 felony subject to punishment by a maximum of ten years imprisonment in the state penitentiary [2]. Thus, as state asserts, the trial court was authorized to impose a separate sentence of up to ten years in the penitentiary for each of Wooley's three convictions. *State v. Corle*, 294 N.W.2d 799 (S.D. 1980); *State v. Coe*, 286 N.W.2d 340 (S.D. 1979) (where information charges separate offenses in separate counts, separate sentences may be imposed for each offense). As state also asserts, the trial court was authorized to suspend execution of each of these sentences on the condition of Wooley's imprisonment in the county jail for up to 180 days or in the state penitentiary for up to 60 days. SDCL 23A–27–18.1. Finally, the trial court was authorized to direct that the three sentences be served concurrently under SDCL 22–6–6.1:

> If a defendant has been convicted of two or more offenses regardless of when the offenses were committed or when the judgment or sentence was entered, the judgment or sentence may be that the imprisonment on the subsequent conviction may run concurrently with the imprisonment on any prior conviction or the imprisonment for the subsequent offense may commence at the expiration of the imprisonment upon any other offense.

However, there is a limitation on a sentencing court's authority to order concurrent service of multiple sentences. Although a question of first impression before this court, the rule is well established in a number of jurisdictions that, "[t]wo sentences, in order to run concurrently, must be sentences to the same place of confinement." *In re Smith*, 235 N.C. 169, 69 S.E.2d 174, 176 (1952). *Accord People v. Emig*, 177 Colo. 174, 493 P.2d 368 (1972); *People v. Kennay*, 391 Ill. 572, 63 N.E.2d 733 (1945); *Alford v. State*, 155 Ind.App. 592, 294 N.E.2d 168 (Ind.Ct.App.1973) *overruled on other grounds, Holland v. State*, 265 Ind. 216, 352 N.E.2d 752; *Anthony v. Kaiser*, 350 Mo. 748, 169 S.W.2d 47 (1943); *State v. Nelson*, 246 Or. 321, 424 P.2d 223 (1967); *Story v. State*, 114 Tex.Crim. 668, 27 S.W.2d 204 (Tex.Crim.App.1930) *overruled on other grounds, White v. Frank*, 161 Tex.Crim. 653, 279 S.W.2d 875. "A

---

1. $1,583.89 restitution was ordered on Count I and $1,034.00 on Count III.

2. SDCL 22–34–1 (first degree intentional damage to property), SDCL 22–30A–17 (grand theft), SDCL 22–6–1(6) (penalty for Class 4 felony).

sentence in the penitentiary and one adjudging that a man shall spend a certain time in the county jail cannot be served out concurrently." *Story*, 27 S.W.2d at 204. Thus, "[a] defendant cannot serve a county jail sentence while incarcerated in the penitentiary, and conversely, he cannot serve a penitentiary sentence in the county jail." *Emig*, 493 P.2d at 369.

 In this instance, the trial court's suspension of two of Wooley's sentences on the condition that he spend 180 days in the county jail while concurrently serving a five year penitentiary sentence results in the sort of simultaneous incarceration prohibited by the general rule cited above. Moreover, it violates the jurisdictional boundaries we have recognized between suspended sentences and paroles.

In our decisions in *State v. Huftile*, 367 N.W.2d 193 (S.D.1985) and *State v. Oban*, 372 N.W.2d 125 (S.D.1985), we emphasized the separate jurisdictional principles involved in suspending execution of a sentence and parole. *See also Turo v. Solem*, 427 N.W.2d 843 (S.D.1988). Here, the trial court's suspension of Wooley's two sentences on the condition that he spend 180 days in the county jail indicates an intention by the trial court that he remain under the supervision of the judicial branch of government for the duration of the suspended portion of the sentences. SDCL 23A–27–18.2.[3] However, while in the penitentiary on his grand theft sentence or

while on any parole of that sentence, Wooley will be under the supervision of the Department of Corrections or the Board of Pardons and Paroles, agencies of the executive branch of government. SDCL 24–2–1[4], SDCL 24–15–14[5], SDCL 24–15–24[6]. Thus, the trial court's sentences result in the exercise of simultaneous jurisdiction over Wooley by separate agencies of separate branches of government, a result we clearly condemned in *Huftile:*

> Uncertainty, if not chaos will result if a parolee is required to satisfy two supervisors; the sentencing court and the Board of Charities and Corrections [now the Department of Corrections], each with a different set of restrictions and conditions.... Those committed to the penitentiary would thus see confusion where they should be exposed to order and certainty.

*Huftile*, 367 N.W.2d at 196. Therefore, we conclude that the trial court exceeded its jurisdiction and authority in ordering that Wooley's two intentional damage to property sentences be suspended on the condition that he serve 180 days in the county jail.

██ In *Application of Adams on Behalf of Schmit*, 360 N.W.2d 513 (S.D.1985) we held that an invalid order suspending a sentence voids the order of suspension while the sentence itself stands. Accordingly, we affirm Wooley's sentences but reverse the orders suspending execution of the two sentences for intentional damage to property. This leaves Wooley with three

**3.** SDCL 23A–27–18.2 provides:

A person who is sentenced to a county jail as a condition of suspended imposition of sentence, suspended sentence or suspended execution of sentence, is under the supervision of the court service officer assigned by the court having jurisdiction of the person.

**4.** SDCL 24–2–1 provides in pertinent part:

All inmates under confinement in the state penitentiary are under the charge and custody of the warden, who shall govern, superintend, house, discipline and employ them in the manner prescribed by law, the rules and the institutional policies of the department of corrections.

**5.** SDCL 24–15–14 provides:

The department of corrections shall exercise supervision over all paroled prisoners, and

shall, subject to chapter 3–6A, employ or appoint such officers and employees as may be necessary to accomplish the proper supervision of parolees, persons on parole under a suspended sentence and inmates on work release or house arrest.

**6.** SDCL 24–15–24 provides:

If the board of pardons and paroles is satisfied that any provision of § 24–15–20 has been violated, it may revoke the parole and reinstate the terms of the original sentence and conviction or it may modify conditions of parole and restore parole status. In addition, the board is authorized to order the reduction of time in full or in part for good conduct granted under § 24–5–1. If the board does not find that the provisions of § 24–15–20 have been violated, it may restore the parolee to the original or modified terms and conditions of his parole.

concurrent five year sentences in the penitentiary subject only to any action by the Board of Pardons and Paroles. *Application of Adams, supra.*

Affirmed in part and reversed in part.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

MILLER, J., concurs specially.

MILLER, Justice (concurring specially).

I generally concur with the majority opinion, especially as it pertains to the unique facts of this case.

It should be observed that, quite appropriately, the majority opinion does not prevent a judge from giving a prisoner "credit" for time served or being served in another penal institution.